■ P & F INDUSTRIES, INC., Appellant, v MEDALLION GROUP, INC., et al., Respondents. — In an action to recover damages for tortious interference with contract, plaintiff appeals from so much of an order of the Supreme Court, Nassau County (Lockman, J.), entered December 17, 1982, as, upon reargument, adhered to its original determination granting defendants' motion for summary judgment dismissing the complaint. ¶ Order reversed insofar as appealed from, with costs, order dated June 30, 1982 vacated and defendants' motion for summary judgment denied. ¶ Plaintiff decided to close down its above-ground swimming pool division and in furtherance of that goal, it entered into an agreement with Medallion Pool Corporation (Pool), a subsidiary of defendant Medallion Group, Inc. (Group), on September 5, 1975. Group was also the parent corporation of defendants Health Chem Corporation (Health Chem) and Health Med Corporation (Health Med). ¶ The agreement provided, *inter alia,* that (1) plaintiff would deliver its swimming pool division's inventory, consisting of finished goods (pools and accessories), as well as work in progress and raw materials, to Pool, (2) Pool would use its best efforts to sell the finished goods, as sales agent for plaintiff, and to use the other materials to complete and manufacture additional pools, and (3) "[a]ll billing for FINISHED INVENTORY AND ACCESSORIES sold shall be in the name of [Pool] as

agent for [plaintiff] and all payments shall be held by [Pool] in trust for [plaintiff] and * * * segregated in a special agency account", from which Pool, after drawing its stated commission, was to remit the balance to plaintiff. In due course the merchandise was delivered to Pool, and the special agency account was opened. ¶ In February, 1976, the banks which had been extending credit to Pool structured a bank loan to Pool in the sum of $900,000 by channeling the loan through each of the three corporate defendants. The loan was fully collateralized and guaranteed by all three of the corporate defendants. ¶ Pool eventually paid plaintiff $129,500 pursuant to their agreement and in September, 1976 it discontinued operations and returned its remaining inventory to plaintiff. In early 1977, Pool's creditors filed an involuntary bankruptcy petition. Shortly thereafter, plaintiff was provided with Pool's accounting of the sales of plaintiff's materials and the amounts due and paid to Pool. Plaintiff thereupon filed a claim as a general creditor in the bankruptcy proceeding in the sum of $350,000, representing the amount allegedly still owed by Pool to it under their agreement. ¶ Thereafter, the trustee in bankruptcy commenced an action in the Federal District Court for the Eastern District of New York against Group, Health Med and Health Chem. The complaint in the Federal court alleged that the February, 1976 loan transaction was in fact a capital infusion disguised as a secured debt in order to give Group, Health Med and Health Chem an unfair advantage over Pool's general creditors. On December 31, 1979 the District Court for the Eastern District of New York dismissed the complaint of the trustee in bankruptcy on the ground that: "Nevertheless, the purpose of the loan, as we cited in the loan documents in evidence, was to lend money to Pool and to assist Pool's operations. The structure of the loan was merely to grant further protection to the banks to assure that they would not throw any more good money after what was already possibly in jeopardy." ¶ While the action of the trustee in bankruptcy was pending in Federal District Court, plaintiff instituted the instant action against the defendants for tortious interference with contract. The complaint alleged, *inter alia,* that (1) "there remained approximately $350,000 in trust funds due to [plaintiff] for the sale of inventory conducted by * * * Pool as an agent for [plaintiff]", (2) after the accumulation of $350,000 in trust funds by Pool, "the defendants * * * with knowledge of the Agreement and its terms, caused the trust funds to be diverted to a creditor common to all the defendants * * * which transfer was effected for the benefit of the defendants" and (3) the payment of the trust funds to the defendants' creditor was "wrongful and done in violation of the Agreement, as known by the defendants", in that Pool "did not have title to the trust funds but only * * * legal possession thereof as a trustee" for plaintiff. ¶ After joinder of issue, defendants moved for summary judgment dismissing the instant action for tortious interference with contract. Special Term granted the motion. By order entered December 17, 1982, the court granted reargument, but adhered to the original determination. ¶ We reverse and deny defendants' motion for summary judgment. A review of the record indicates that there are issues of fact as to whether defendants, for their own benefit and for reasons other than the interest of Pool, procured Pool not to deposit sales proceeds (which were owing to plaintiff pursuant to its contract) into the segregated agency account, but instead, to apply the funds to repayment of bank loans upon which the defendant corporations were liable as principals as well as guarantors (see *Hornstein v Podwitz,* 254 NY 443; cf. *Felsen v Sol Cafe Mfg. Corp.,* 24 NY2d 682). ¶ The fact that the trustee in bankruptcy unsuccessfully litigated the issue of whether the 1976 loan transactions, including the provisions for repayment, were fraudulent as to Pool's general creditors does not preclude plaintiff from asserting that defendants tortiously interfered with its contract with Pool. This claim was personal to

plaintiff. It was not an asset of Pool's before it was bankrupt or of its estate while it was in bankruptcy. It therefore could not have been asserted by the trustee in bankruptcy (see *Barnes v Hirsch,* 215 App Div 10, 11, affd 242 NY 555; *Roach v Reldan Trading Corp.,* 321 F2d 42, 43). Titone, J. P., Mangano, Gibbons and Brown, JJ., concur.